TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Minta J. Nester

*Counsel to Albert Togut, Not Individually But*
 *Solely in His Capacity as Chapter 7 Trustee of*
 *Chowaiki & Co. Fine Art Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 7 |
|  | : |  |
| CHOWAIKI & CO. FINE ART LTD., | : | Case No. 17-13228 (MKV) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

----------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| SHAY ROSEN, | : |  |
|  | : |  |
| Plaintiff, | : | Adv. Pro. No. 17-01242 (MKV) |
|  | : |  |
| v. | : |  |
|  | : |  |
| CHOWAIKI & CO. FINE ART LTD., | : |  |
|  | : |  |
| Defendant. | : |  |

----------------------------------------------------------------- x

## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT;  IMPOSITION OF CONSTRUCTIVE TRUST; <u>AND TURNOVER OF FUNDS</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

JURISDICTION ...................................................................................................... 3

RELEVANT BACKGROUND .................................................................................. 3

   I.   The Chapter 7 Case ..................................................................................... 3

   II.  The Business Relationship Between the Parties ...................................... 3

RELIEF REQUESTED ............................................................................................ 6

BASIS FOR RELIEF ............................................................................................... 6

   I.   Legal Standard............................................................................................. 6

   II.  Count I of the Amended Complaint, Seeking a Declaratory Judgment,
      Should be Dismissed .................................................................................. 7

      A.   Plaintiff Has Failed to Plead An Actionable Misstatement ........... 8

      B.   Plaintiff Has Failed to Plead Facts Sufficient to Show the Required
           Elements of Falsity or Intent to Deceive ....................................... 10

   III. Count II of the Amended Complaint, Seeking a Declaratory Judgment
      Concerning the Equitable or Ownership Interest in the Wired Funds,
      Should be Dismissed ................................................................................ 10

   IV. Plaintiff's Constructive Trust Claim Should be Dismissed with Prejudice ........ 11

      A.   The Amended Complaint Fails to State a Claim for Constructive Trust ... 11

          1.  Plaintiff Cannot Show a Confidential or Fiduciary Relationship ......... 12

          2.  Plaintiff Does Not Identify Any Promise by the Debtor That Was
              Relied Upon in Connection with the Transfer ....................................... 14

          3.  Plaintiff Fails to Allege Unjust Enrichment.............................................. 16

      B.   Plaintiff's Inability to Trace Funds is Preclusive of a Constructive
           Trust Claim ..................................................................................... 19

NOTICE ................................................................................................................ 21

NO PRIOR REQUEST FOR RELIEF ................................................................... 21

CONCLUSION ..................................................................................................... 21

**Cases**

*Ades & Berg Grp. Investors v. Breeden (In re Ades & Berg Grp. Investors),*
   550 F.3d 240 (2d Cir. 2008) ................................................................................. 17

*Allen-Bradley Co., Inc. v. Commodore Bus. Mach., Inc. (In re Commodore Bus. Mach., Inc.),*
   180 B.R. 72 (Bankr. S.D.N.Y. 1995) ....................................................................... 7

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ..................................................................... 7

*Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) .............................................................. 7

*Blue Trees Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
   369 F.3d 212 (2d Cir. 2004) .................................................................................. 6

*Cadle Co. v. Mangan (In re Flanagan),*
   503 F.3d 171 (2d Cir. 2007) ................................................................................. 18

*Conn. Res. Recovery Auth. v. Enron Corp. (In re Enron Corp.),*
   Adv. Pro. No. 02-2727 A., 2003 WL 1571719 (Bankr. S.D.N.Y. Mar. 27, 2003) ............. 19

*Fangio v. DivLend Equip. Leasing, LLC (In re Ajax Integrated, LLC),*
   Adv. Proc. No. 14-50012, 2016 WL 1178350 (Bankr. N.D.N.Y. Mar. 23, 2016) ............. 16

*Fetter v. Schink,*
   902 F. Supp. 2d 399 (S.D.N.Y. 2012) ................................................................... 12

*Gordon v. Dino De Laurentiis Corp.,*
   141 A.D.2d 435, 529 N.Y.S. 2d 779 (1st Dep't 1988) ............................................... 9

*Harris v. New York State Dep't of Health,*
   202 F. Supp. 2d 143 (S.D.N.Y. 2002) ................................................................... 10

*Hawthorne Grp., LLC v. RRE Ventures,*
   7 A.D.3d 320, 776 N.Y.S. 2d 273 (1st Dep't 2004) ................................................... 9

*Hutton v. Klabal,*
   726 F. Supp. 67 (S.D.N.Y. 1989) .......................................................................... 14

*In re DJK Residential LLC,*
   416 B.R. 100 (Bankr. S.D.N.Y. 2009) ..................................................................... 7

*In re Dreier LLP,*
   429 B.R. 112 (Bankr. S.D.N.Y. 2010) ............................................................... 17, 18

*In re Handy & Harman Refining Grp.,*
   266 B.R. 24 (Bankr. D. Conn. 2001) ................................................................ 19, 20

*In re Netia Holdings S.A.,*
278 B.R. 344 (Bankr. S.D.N.Y. 2002) ............................................................... 11

*LFD Operating, Inc. v. Ames Dept. Stores, Inc. (In re Ames Dept. Stores, Inc.),*
274 B.R. 600 (Bankr. S.D.N.Y. 2002) ........................................................ 14, 19

*Maalin Bakodesh Soc'y, Inc., v. Lasher,*
301 A.D.2d 634, 754 N.Y.S.2d 331 (2d Dep't 2003) ........................................ 13

*O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674 (2d Cir. 1991) .............................. 7

*Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc.*
*(In re Columbia Gas Sys., Inc.),* 997 F.2d 1039 (3d Cir. 1993) ............................ 19

*Payne v. White,*
101 A.D.2d 975, 477 N.Y.S.2d 456 (3d Dep't 1984) ........................................ 15

*Superintended of Ins. for the State of N.Y. v. Ochs (In re First Central Fin. Corp.),*
377 F.3d 209 (2d Cir. 2004) ............................................................... 11, 17, 18

*Tekinsight.Com, Inc. v. Stylesite Marketing, Inc. (In re Stylesite Marketing, Inc.),*
253 B.R. 503 (Bankr. S.D.N.Y. 2000) ........................................................ 8, 11

**Statutes**

11 U.S.C. § 541(d) ................................................................................... 10

28 U.S.C. § 157 ....................................................................................... 3

28 U.S.C. § 1334 ..................................................................................... 3

28 U.S.C. § 1408 ..................................................................................... 3

28 U.S.C. § 1409 ..................................................................................... 3

**Rules**

Fed. R. Bankr. P. 7009 ...................................................................... 1, 3, 7

Fed. R. Bankr. P. 7012 ......................................................................... 1, 3

Fed. R. Civ. P. 9 .......................................................................... 1, 2, 7, 12

Fed. R. Civ. P. 12 .......................................................................... 1, 2, 12

**Other Authorities**

106 N.Y. Jur. 2d Trusts § 173 .................................................................. 15

106 N.Y. Jur. 2d Trusts § 174 .................................................................. 15

TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as the Chapter 7 trustee (the "Trustee" or the "Defendant") of the estate of Chowaiki & Co. Fine Art Ltd. (the "Debtor") in the above captioned case, by his attorneys, Togut, Segal & Segal LLP, respectfully submits this motion to dismiss (the "Motion") the *First Amended Adversary Complaint for Declaratory Judgment;  Imposition of Constructive Trust;  and Turnover of Funds* (the "Amended Complaint") filed by Shay Rosen ("Rosen" or "Plaintiff"), pursuant to Rules 9(b) and 12(b)(6)  of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable pursuant to Rules 7009 and 7012(b)  and of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully represents:

## PRELIMINARY STATEMENT

In his Amended Complaint, Plaintiff asserts that prior to the commencement of this Chapter 7 case on November 13, 2017 (the "Petition Date"), the Debtor allegedly entered into an agreement with Plaintiff to purchase a work of art, or an interest in a work of art, and re-sell it at a profit.  Pursuant to this purported agreement, Plaintiff allegedly paid $230,000 to the Debtor in the weeks leading up to the Petition Date.  According to the Amended Complaint, this contemplated purchase was never consummated.

Now, in an attempt to evade the provisions of the Bankruptcy Code aimed at the orderly administration of a debtor's estate and the uniform treatment of creditors, Plaintiff claims entitlement to the imposition of a constructive and declaratory relief to take all of the funds in the estate, to the detriment of the estate and all of its creditors.

This is not Plaintiff's first bite at the apple. On December 12, 2017, Plaintiff filed an internally-inconsistent complaint that failed to transform a failed transaction into more than that, and failed to demonstrate how Plaintiff is more than a commercial counterparty and a creditor with, at most, a general unsecured claim against the Debtor. Having failed, twice, to do that, Plaintiff has also failed to establish why he should be permitted to take all of the funds on hand in the estate to satisfy his pre-petition claim to the detriment of the Debtor's other creditors, and the Trustee, who needs the funds on hand to insure works of art, pay storage fees and otherwise administer this estate.

The Trustee's motion to dismiss Plaintiff's original complaint identified the facts that Plaintiff would be required, but failed, to plead to establish a joint venture as a predicate to seeking a constructive trust. *See* Dkt. No. 3. Notwithstanding having knowledge of those requirements, Plaintiff's amended complaint again fails to establish that a joint venture existed. Indeed, the Amended Complaint confirms that Plaintiff cannot remedy the factual deficiencies identified by the Trustee. Rather than supplying the allegations necessary to support relief in the Amended Complaint, Plaintiff pleads facts that bolster the Trustee's arguments in favor of dismissal. Plaintiff concedes and confirms that he is one of many victims of the Debtor's alleged fraudulent practices, yet he seeks to deprive the estate of all of its cash on hand. If Plaintiff were granted the relief requested, similarly situated victims would potentially be left without means of recovery, and the Trustee's ability to administer the estate would be compromised (*e.g.*, storage and insurance for the works of art recovered by the Trustee to date).

Accordingly, the Amended Complaint should be dismissed with prejudice in accordance with, *inter alia*, Federal Rules 9(b) and 12.

## JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The predicates for relief requested herein are Federal Rules 9(b) and 12 and Bankruptcy Rules 7009 and 7012.

## RELEVANT BACKGROUND

3.      Unless otherwise stated, the facts set forth herein are drawn from the Amended Complaint and other documents properly before this Court on a motion to dismiss.  The facts alleged in the Amended Complaint are assumed to be true for purposes of this Motion.

### I.      The Chapter 7 Case

4.      On the Petition Date, the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of title 11, United States Code (the "Bankruptcy Code").

5.      On November 14, 2017, Albert Togut was appointed Chapter 7 trustee.

6.      On November 27, 2017, the Debtor filed its schedules of assets and liabilities (the "Schedules"), listing liabilities of $11,877,011.03 and assets of $276,681.59. *See* Dkt. No. 7.

### II.      The Business Relationship Between the Parties

7.      Prior to the Petition Date, the Debtor operated an art gallery at 500 Park Avenue, Suite 16C, New York City, New York.

8.      According to the Debtor's Statement of Financial Affairs [Dkt. No. 8], the Debtor has two shareholders:  David Dangoor ("Dangoor"), a majority shareholder holding a 66.7% interest, and Ezra Chowaiki ("Chowaiki"), a minority

shareholder holding a 33.3% interest. Chowaiki also served as Director and President of the Debtor.

9.  According to the Amended Complaint, on or about October 11, 2017, Plaintiff was introduced to Chowaiki by Christine Barberi ("Barberi"). *See* Am. Compl. at ¶ 11. It was Barberi who first presented to Plaintiff the idea of a transaction involving the Debtor and the purchase of a painting by Wassily Kandinsky (the "Art Work"). *See id.*

10.  According to Plaintiff, Barberi told Plaintiff that Chowaiki was "looking to either sell [the Kadinsky painting] and make a profit or buy it from the current owner and share the investment with a partner and then resell and make a substantial profit." Am. Compl. at ¶ 11 (alteration in original).

11.  It was "[o]n the strength of Barberi's introduction" that Plaintiff discussed a prospective deal with Chowaiki. Am. Compl. at ¶ 12.

12.  The Amended Complaint alleges that Chowaiki "falsely claimed he could and would acquire an ownership share of [the Art Work] for Rosen," and characterized the Art Work as "a particularly good resale investment." Am. Compl. at ¶ 13. According to the Amended Complaint, Chowaiki predicted that the Art Work could be resold "for anywhere between $1.5-2m." *Id.*

13.  Plaintiff alleges that shortly thereafter, Chowaiki represented that there was an interested party "willing to pay $1.2m to own it outright and he will let me resell it one day when he feels like selling it." Am. Compl. at ¶ 14. According to Plaintiff, "due to the urgency of re-selling the painting," Chowaiki added: "I have to pay $950k and sell it for $1.2m. If you want to participate, I can make the return proportional." *Id.*

14.  As set forth in Exhibit A to the Amended Complaint, on October

12, 2017, Chowaiki told Plaintiff: "On this piece, I can sell a half share." *See* Am.
Compl. Ex. A; *see also* Am. Compl. at ¶ 13.

15. According to Plaintiff, the parties contemplated that Plaintiff
"would obtain a 1/3 ownership share in the painting for $316,666, based on a purchase
price of $950,000; but in the subsequent days, the two settled on Rosen obtaining a 24%
interest at $230,000." Am. Compl. at ¶ 15. The Amended Complaint offers no
explanation for why an alleged agreement resulted in an uneven allocation of interests
that Plaintiff asserts.

16. This arrangement, according to the Amended Complaint,
constituted a "sham Joint Venture," *see* Am. Compl. at ¶ 42, with the purpose of
"purchas[ing] the Kandinsky three ways with Rosen, Barberi, and the [Debtor]…." Am.
Compl. at ¶ 21; *see also id.* at ¶ 35 (describing a joint venture "to jointly acquire the
Kandinsky painting to which Chowaiki claimed to have access").

17. Plaintiff alleges that, just weeks before the Petition Date, he caused
$230,000 to be transferred from his wife's bank account to the Debtor's bank account
(the "Wired Funds"), *see* Am. Compl. at ¶¶ 1, 16, and that the Wired Funds remain
"distinct and traceable" in the Debtor's City National Bank Account. *Id.* at ¶ 16.

III. **Allegations of Fraud Perpetrated by the Debtor**

18. Plaintiff alleges that Barberi had described Chowaiki to Plaintiff as
having "bought and sold a lot of Kandinsky works" and as "someone you can
absolutely trust." Am. Compl. at ¶ 11; *see also id.* ("She ended by saying that she had
known Chowaiki 'for many, many years' and that the two had 'done a lot of business
together and [were] close friends.'"). Despite this introduction, Plaintiff reports being
told by Barberi shortly thereafter that Chowaiki and Dangoor, "were being accused of
widespread fraud that involved luring investors and collectors into paying hundreds of

thousands of dollars for works of art – by renowned artists such as Kandinsky – that neither the Debtor nor either of its principals owner or had the right to sell." *Id.* at ¶ 19.

19.     The Amended Complaint describes a widespread fraud upon a multitude of victims. *See* Am. Compl. at ¶¶ 27-32.

20.     As an example, Plaintiff attaches to the Amended Complaint a written agreement between the Debtor and Carpenter Fine Violins & Collectibles LLC ("Carpenter") to purchase the same Art Work that was the subject of the transaction with Rosen. *See* Am. Compl. at ¶¶ 24-25; *see* Am. Compl. Ex. C. This joint venture agreement provides for, among other things, the sale of the Art Work. *See* Am. Compl. Ex. C at ¶ 5. Plaintiff is not a party to the Debtor's agreement with Carpenter, and the agreement provides that there could be no modifications, amendments or terminations, absent written consent by the Debtor and Carpenter. *See id.* at ¶ 16.

21.     Consistent with Plaintiff's allegations, the Trustee has become aware of various allegations of fraud by the Debtor.[1]

## RELIEF REQUESTED

22.     The Trustee seeks entry of an Order, dismissing the Amended Complaint with prejudice.

## BASIS FOR RELIEF

### I.     Legal Standard

23.     To survive a motion to dismiss for failure to state a claim, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[1]     The Court is entitled to take into consideration public records such as court filings when deciding a motion to dismiss. *See, e.g., Blue Trees Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir. 2004) ("But we may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.").

of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged.'" *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

24.     Where a complaint alleges mistake or fraud, the pleading requirements imposed by Federal Rule 9(b), made applicable here by Bankruptcy Rule 7009, are even more demanding. Under Federal Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. (9)(b), including, at a minimum, facts that give rise to a strong inference of fraudulent intent. *See, e.g., O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674 (2d Cir. 1991). The heightened pleading standard is applicable where a constructive trust claim is based on fraud or mistake. *See, e.g., Allen-Bradley Co., Inc. v. Commodore Bus. Mach., Inc. (In re Commodore Bus. Mach., Inc.)*, 180 B.R. 72, 78-79 (Bankr. S.D.N.Y. 1995) (dismissing constructive trust claim brought under Pennsylvania law).

25.     Here, Plaintiff's allegations fall far short of either standard, and, now that Plaintiff has failed to adequately plead twice, the Amended Complaint should be dismissed with prejudice.

## II.     Count I of the Amended Complaint, Seeking a Declaratory Judgment, Should be Dismissed

26.     Count I purports to be a cause of action for declaratory judgment finding that the Defendant fraudulently induced Plaintiff to transfer the Wired Funds to the Debtor's City National Bank Account in New York. *See* Am. Compl. at ¶ A.

27.     Under New York law, to state a claim for fraud, a plaintiff must demonstrate:  (1) a misrepresentation, concealment, or nondisclosure of a material fact; (2) knowledge of falsity, or *scienter*;  (3) intent to deceive;  (4) justifiable reliance;  and (5) injury.  *See, e.g., Tekinsight.com, Inc. v. Stylesite Marketing, Inc. (In re Stylesite Marketing, Inc.),* 253 B.R. 503, 509 (Bankr. S.D.N.Y. 2000).  The Amended Complaint is lacking in many respects.

## A.     Plaintiff Has Failed to Plead An Actionable Misstatement

28.     Plaintiff complains that the Debtor, acting through Chowaiki, "knowingly misrepresented to Rosen that a true and genuine Kandinsky painting entitled *Schichtenweise* existed for sale, and that Rosen could participate in the Joint Venture with Chowaiki to purchase the painting and resell it for a profit."  Am. Compl. at ¶ 39.[2]  The Amended Complaint further asserts that the "Debtor fraudulently represented its access to the Kandinsky painting to induce Rosen to transfer the funds for the purpose of participating in the **supposed** joint venture, which fraudulent conduct by the Debtor invalidated **any supposed** joint venture agreement."  Am. Compl. at ¶ 41 (emphasis supplied).  Plaintiff further alleges that "neither the Kandinsky painting nor the resale buyer ever materialized."  Am. Compl. at ¶ 17;  *see also id.* at ¶ 40.

29.     Notably absent from the Amended Complaint is any meaningful evidence to suggest that the Debtor's statements were false when made.  The fact that the Art Work was not purchased, without more, does not support Plaintiff's claims of a misrepresentation.  Ultimately, any number of issues could have arisen that prevented the transaction from closing.  By Plaintiff's own admission, he never received an update after the initial transaction, so he cannot state with any certainty that fraud – and not

---

[2]     Though the Amended Complaint asserts that the transfer was made "[r]elying on these and other false claims," that is insufficiently vague to be a basis for the Amended Complaint.  *See* Am. Compl. at ¶ 40.

happenstance – caused the purchase to fail.  *See* Am. Compl. at ¶ 17.

30.     Indeed, any such assertion is flatly contradicted by the Amended Complaint itself, which provides that "any opportunity for Chowaiki to purchase the Kandinsky evaporated" by November 4, 2017 – *i.e.,* **after** the statements that Plaintiff alleges he relied upon were made.  *See* Am. Compl. at ¶ 26;  *see also* Am. Compl. Ex. D (a November 4, 2017 email described by Plaintiff as "reflecting the seller's broker of the Kandinsky withdrawing the opportunity").  If anything, Plaintiff's allegations (and supporting exhibits) suggest that Chowaiki's statements regarding the availability of the Art Work for purchase were accurate when made.

31.     It appears to be Plaintiff's hope that second-hand accusations and speculation about other alleged misconduct, *see, e.g.,* Am. Compl. at ¶¶ 19-22, 27, will lead the Court to infer that knowing misrepresentations occurred.  But that is not a permissible inference.  Absent specific pleading and real evidence, the Amended Complaint offers nothing more than conclusory assertions to support the claim that these statements were false.  *See, e.g.,* Am. Compl. at ¶¶ 18-22.  These conclusory statements are insufficient

32.     More, the alleged statements are not of the type required to support a fraudulent inducement claim.  In essence, it seems that the allegations are merely that the contemplated purchase and re-sale did not occur.  However, a claim for fraudulent inducement must allege more than a misrepresented intent to perform under the contract.  *Hawthorne Grp., LLC v. RRE Ventures,* 7 A.D.3d 320, 323-24, 776 N.Y.S. 2d 273 (1st Dep't 2004) ("In a fraudulent inducement claim, the alleged misrepresentation should be one of then-present fact, which would be extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract . . . , and not merely a misrepresented intent to perform.") (citations omitted); *Gordon v. Dino De*

9

*Laurentiis Corp.,* 141 A.D.2d 435, 436, 529 N.Y.S. 2d 779 (1st Dep't 1988) ("A fraud claim is not sufficiently stated where it alleges that a defendant did not intend to perform a contract with a plaintiff when he made it….").

**B.    Plaintiff Has Failed to Plead Facts Sufficient to Show the Required Elements of Falsity or Intent to Deceive**

33.    Having failed to demonstrate a misrepresentation, it follows that Plaintiff cannot show either knowledge of the falsity or intent to deceive.  The Amended Complaint offers nothing more than conclusory allegations of knowledge and speculation as to intent.  *See* Am. Compl. at ¶¶ 18-22, 27.  However, "conclusory allegations, unwarranted speculation or unsupported deductions or legal arguments cast as factual pleadings" cannot defeat a motion to dismiss.  *Harris v. New York State Dep't of Health,* 202 F. Supp. 2d 143, 175 (S.D.N.Y. 2002).

**III.    Count II of the Amended Complaint, Seeking a Declaratory Judgment Concerning the Equitable or Ownership Interest in the Wired Funds, Should be Dismissed**

34.    Count II purports to be a cause of action for declaratory judgment that under section 541(d) of the Bankruptcy Code and applicable New York state law, the Debtor and its estate have no equity or ownership interest in the Wired Funds, the Wired Funds are not part of the Debtor's bankruptcy estate, and that the Wired Funds are Rosen's property.  *See* Am. Compl. at ¶ B.  The declaration sought by Count II is plainly redundant of Count III, which asks the Court to impose a constructive trust and turnover the Wired Funds.  *See id.* at ¶¶ 28-32.

35.    Section 541(d) of the Bankruptcy Code provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of the any equitable interest in such

property that the debtor does not hold." Plaintiff contends that the Wired Funds are being held in constructive trust for him alone, and consequently is not part of the bankruptcy estate, which is being administered for all of the Debtor's creditors. Thus, the declaration that Plaintiff seeks regarding the funds on hand in this estate is redundant of Plaintiff's constructive trust claim.

36. Given this redundancy (and the substantive shortcomings discussed below in connection with Plaintiff's constructive trust claim), the Court can, and should, refrain from deciding Count II.

## IV. Plaintiff's Constructive Trust Claim Should be Dismissed with Prejudice

### A. The Amended Complaint Fails to State a Claim for Constructive Trust

37. Under New York law, the stated elements for a claim of constructive trust are: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of subject *res* in reliance on that promise; and (4) unjust enrichment. *See, e.g., Superintendent of Ins. for the State of N.Y. v. Ochs (In re First Central Fin. Corp.*), 377 F.3d 209, 212 (2d Cir. 2004). "The fourth element is the most important since the purpose of the constructive trust is prevention of unjust enrichment. *Id.* (internal quotation marks omitted).

38. While the standard is a flexible one, these elements remain guideposts, *see In re Stylesite Marketing, Inc.,* 253 B.R. at 508, and where a plaintiff fails in multiple respects, its complaint should be dismissed. *See In re Netia Holdings S.A.,* 278 B.R. 344, 356 (Bankr. S.D.N.Y. 2002) ("Notwithstanding the flexibility with which a court might have to dispense with the presence of one (or even more than one) of the traditional factors, where, as here, none or almost none of the factors for imposition of a constructive trust are satisfied, [the claimant has] shown little likelihood of success on a constructive trust claim.").

39.     Plaintiff has failed to demonstrate these required elements, both in his original and Amended Complaint.  At best, Plaintiff offers only conclusory allegations of certain elements, *see, e.g.,* Am. Compl. at ¶ 18, which are insufficient.  As a result, Plaintiff has failed to state a claim even under the more liberal pleading standard imposed by Federal Rule 12(b) and certainly under the heightened pleading requirements of Federal Rule 9.

### 1.     *Plaintiff Cannot Show a Confidential or Fiduciary Relationship*

40.     Plaintiff contends that Chowaiki owed a fiduciary duty "by virtue of his status as a partner in the Joint Venture."[3]  *See* Am. Compl. at ¶ 51.  However, Plaintiff has failed to establish a joint venture – indeed, Plaintiff admits that any joint venture among the parties was "sham."  *See id.* at ¶ 42.  This argument is insufficient, because the Amended Complaint fails to adequately plead that a joint venture existed between the Debtor and Plaintiff.  Rather, the relationship between the Debtor and Plaintiff was no more than a commercial, debtor-creditor relationship.

41.     Under New York law, a joint venture requires:  (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit;  (2) their agreement must evidence their intent to be joint venturers;  (3) each must make a contribution of property, financing, skill, knowledge, or effort;  (4) each must have some degree of joint control over the venture;  and (5) there must be a provision for ***both profits and losses***.  *See, e.g., Fetter v. Schink,* 902 F. Supp. 2d 399, 403 (S.D.N.Y. 2012). The absence of one or more of these elements is fatal to the establishment of a joint venture contract.  *See id.*

42.     Critically, Plaintiff has presented no evidence to demonstrate that

---

[3]   Plaintiff fails to define the term "Joint Venture" in the Amended Complaint, and appears to use it as a slight of hand attempt to include himself in a joint venture that did not exist.

the Debtor and Plaintiff had determined how to share losses, which is an indispensible element of a joint venture. *See Fetter,* 902 F. Supp. 2d at 404 ("Indeed, the fact that an individual may receive a share of the profits is not dispositive, since all of the elements of the relationship must be considered, including whether the alleged agreement contained a provision for sharing losses as well. Therefore, the fifth requirement is not met."); *see also Maalin Bakodesh Soc'y, Inc., v. Lasher,* 301 A.D.2d 634, 635, 754 N.Y.S.2d 331 (2d Dep't 2003) ("However, it is well-settled that an assertion that there was an agreement to distribute the proceeds of an enterprise on a percentage basis does not suffice to establish the existence of a joint venture.").

43.     Nor has Plaintiff alleged the type of control over the enterprise necessary to support Plaintiff's assertion of a joint venture. Quite the opposite. The Complaint pleads facts that show Plaintiff was at best a purchaser or passive investor. *See, e.g.,* Am. Compl. at ¶¶ 11-16. Indeed, Plaintiff concedes that after he transferred the Wired Funds into the Debtor's business account he did not have any further communications with Chowaiki. *See id.* at ¶ 17. It was the Debtor that was to handle the purchase and re-sale transactions. It was the Debtor that was dictating timing. Plaintiff had no control over the purported purchase of the Art Work, and as a result, there was no joint venture between these parties.

44.     Instead, the Amended Complaint (and supporting exhibits) make quite clear that Plaintiff's relationship with the Debtor was nothing more than a contractual arrangement to finance an acquisition of the Art Work for eventual resale. *See* Am. Compl. at ¶¶ 11-16. On September 28, 2017, Carpenter and Chowaiki entered into a joint venture agreement in connection with the Art Work -- Plaintiff was not a party to that agreement. *See* Am. Compl. at ¶ 25; Am. Compl. Ex. C. That agreement could not be altered without the written consent of both parties. *See* Am. Compl. Ex. C

at ¶ 16.  Thereafter, in a secondary transaction, Chowaiki offered Plaintiff an interest in the Art Work.  *See* Am. Compl. Ex. A ("On this piece, I can sell half a share.").  There is no reference to any joint venture in the communications between Chowaiki and Plaintiff attached to the Amended Complaint.  *See id.*

45.     Accordingly, no fiduciary relationship exists between the Debtor and Plaintiff.  *See, e.g., LFD Operating, Inc. v. Ames Dept. Stores, Inc. (In re Ames Dept. Stores, Inc.)*, 274 B.R. 600, 626 (Bankr. S.D.N.Y. 2002) (concluding that "Ames was not a fiduciary to LFD because Ames and LFD entered into an arms-length contractual arrangement and arms-length contractual arrangements do not give rise to fiduciary relationships").

46.     *Hutton v. Klabal,* 726 F. Supp. 67 (S.D.N.Y. 1989), is illustrative here.  In *Hutton*, the plaintiff and the defendants entered into an agreement to purchase and later re-sell etchings.  The plaintiff claimed to have delivered the full purchase price to the defendants, who never delivered or re-sold the etchings.  *See id.* at 69.  Instead, according to the plaintiff, the defendants converted the money paid to them.  The court declined to impose a constructive trust, reasoning that no confidential or fiduciary relationship existed among the parties.  *See id.*

47.     For this reason alone, Plaintiff's constructive trust claim fails.

**2.      *Plaintiff Does Not Identify Any Promise by the Debtor That Was Relied Upon in Connection with the Transfer***

48.     Even if the fiduciary relationship requirement was satisfied (which it is not), it is difficult to see how the "promise" requirement could be satisfied.

49.     Rather, Count III incorporates by reference earlier allegations set forth elsewhere, *see* Am. Compl. at ¶ 49, presumably meaning Plaintiff's allegation that "Chowaiki knowingly and falsely offered Rosen an ownership share in [the Art Work]

and told Rosen that he could quickly resell the [Art Work] for a profit." *See id.* at ¶ 1; *see also id.* at ¶ 21 ("The entire joint venture to purchase the Kandinsky . . . was nothing but a ruse to induce Rosen to transfer the Wired Funds to the Gallery.").⁴ While a promise may be implied from the nature of the transaction in certain narrow circumstances, "mere statements regarding the parties' intentions . . . are insufficient to establish the requisite promise necessary to support a constructive trust." 106 N.Y. Jur. 2d Trusts § 174; *see also Payne v. White,* 101 A.D.2d 975, 976, 477 N.Y.S.2d 456 (3d Dep't 1984) (declining to impose constructive trust where plaintiff's assertion that defendants had stated they planned to invest money was insufficient to allege a promise).

50. As set forth above, the transaction could have failed to close (or failed to generate a profit for the purchasers) for any number of reasons. Accordingly, Chowaiki's alleged representations, to the extent that they may be said to be anything more than a description of a potential business transaction, constitute predictions about the ultimate outcome of the transaction and assertions that could not be reasonably relied upon by Plaintiff.

51. The existence of a promise upon which a plaintiff relied is necessary for the imposition of a constructive trust, and absent the predicate promise, the extraordinary equitable relief of imposition of a constructive trust cannot be granted. *See generally* 106 N.Y. Jur. 2d Trusts § 173. Thus, by its very terms, the

---

⁴ The Amended Complaint further alleges that the Debtor "knowingly misrepresented" that Chowaiki had access to purchase a true and genuine Kandinsky painting entitled *Schichtenwise* for sale. *See* Am. Compl. at ¶ 39. This conclusory statement concerning availability of the Art Work for purchase cannot constitute a promise to support the imposition of a constructive trust, and it is contradicted by Exhibit D to the Amended Complaint.

Amended Complaint fails to allege the necessary elements for a constructive trust claim.[5]

### 3. *Plaintiff Fails to Allege Unjust Enrichment*

52.    "Unjust enrichment is a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties." *In re Ames Dept. Stores, Inc.*, 274 B.R. at 626.  It is the key element of any constructive trust claim.  *See, e.g., id.* ("Despite the elasticity of the doctrine, the prevention of unjust enrichment remains the key requirement for a constructive trust.").  However, here, the argument that the Debtor and its creditors would be unjustly enriched absent the imposition of a constructive trust is unavailing when made in the context of a Chapter 7 case.

53.    To show unjust enrichment, a plaintiff must show that a defendant was enriched at the plaintiff's expense.  *See, e.g., Fangio v. DivLend Equip. Leasing, LLC (In re Ajax Integrated, LLC)*, Adv. Proc. No. 14-50012, 2016 WL 1178350, at *7 (Bankr. N.D.N.Y. Mar. 23, 2016).  That is not the case here.  Here, the Debtor will not be benefitted by the payment in question.  The funds will be distributed by the Trustee to all creditors who hold allowed claims, and Plaintiff – like all creditors – may have a general unsecured claim against the Debtor, which will be afforded the treatment provided other general unsecured creditors of the Debtor under the Bankruptcy Code.

54.    Under these circumstances, the imposition of a constructive trust would only serve to prejudice the Debtor's other creditors by granting priority to Plaintiff and diminishing the pool of assets to be distributed to claim holders.  Because the constructive trust in bankruptcy harms other creditors rather than the debtor, courts

---

[5]    The Amended Complaint refers to statements made by Barberi, which caused Plaintiff to enter business negotiations with Chowaiki.  *See* Am. Compl. at ¶¶ 11-12.  To the extent that Barberi's promises were those upon which Plaintiff relied, the Amended Complaint falls short.

in this jurisdiction have viewed constructive trusts as "'anathema to the equities of bankruptcy' since they essentially punish competing creditors rather than the 'offending debtor.'"  *In re Ajax Integrated, LLC,* 2016 WL 1178350, at *8 (citations omitted).  For this reason, even where wrongful conduct may have occurred, bankruptcy courts are reluctant to impose a constructive trust where doing so would prejudice creditors.  *See id.*  ("[T]he imposition of a constructive trust is at odds with the general goals of the Bankruptcy Code….") (citing *In re First Cent. Fin. Corp.,* 377 F.3d at 217-18).

55.     Indeed, the Second Circuit has observed that "retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust."  *Ades & Berg Grp. Investors v. Breeden (In re Ades & Berg Grp. Investors),* 550 F.3d 240, 245 (2d Cir. 2008) (declining to impose a constructive trust on proceeds where the recipient of those proceeds had commenced bankruptcy proceedings).  "Equity and good conscience do not demand the creation of a constructive trust in this instance, and accordingly," the Court should decline to impose one here.  *Id.*

56.     This concern takes on even greater significance here where Plaintiff has alleged that the Debtor perpetrated a multiple-victim fraud (Am. Compl. at ¶¶ 22-32) – those allegations and the extent to which the liabilities listed in the Schedules exceeds the scheduled assets, support the conclusion that imposing constructive trust would be unfair to the other victims of the Debtor's alleged fraud.  *See, e.g., In re Dreier LLP*, 429 B.R. at 137  ("The reluctance to allow tracing and impose a constructive trust in bankruptcy is particularly compelling when it involves the commingled proceeds of a Ponzi scheme.  The law applicable to equitable receiverships prohibits tracing, and promotes *pro rata* distribution to 'similarly situated' victims of a Ponzi scheme.").

Plaintiff concedes that he is one of many victims of the Debtor's alleged fraud – and indeed one of multiple victims with regard to the same Art Work. Nevertheless, he has rushed to this Court to seek relief that would hinder the Trustee's ability to administer the estate and potentially deprive similarly-situated victims of any recovery whatsoever, thereby privileging Plaintiff over other creditors in a manner contrary to the basic purposes of the Bankruptcy Code.

57. The funds on hand should be used to store, insure, and otherwise administer works of art that have been marshaled by the Trustee and to administer the Debtor's estate for the benefit of all of the Debtor's creditors, rather than to inure solely to the benefit of Plaintiff. *See, e.g., Cadle Co. v. Mangan (In re Flanagan),* 503 F.3d 171, 182 (2d Cir. 2007) ("[T]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with respect to the trust *res*…. This type of privileging of one unsecured claim over another clearly thwarts the principle of ratable distribution underlying the Bankruptcy Code."); *In re First Cent. Fin. Corp.,* 377 F.3d at 217 ("[B]y creating a separate allocation mechanism outside the scope of the bankruptcy system, the constructive trust doctrine can wreak … havoc with the priority system ordained by the Bankruptcy Code.") (citation and internal quotation marks omitted); *In re Dreier LLP,* 429 B.R. 112, 137 (Bankr. S.D.N.Y. 2010) ("The imposition of a constructive trust grants a priority to the beneficiary of the constructive trust, and is fundamentally at odds with the principle of equal distribution among creditors.") (citation omitted).

58. For these reasons, even if the Amended Complaint satisfied the remaining elements of a constructive trust claim, which it does not, Plaintiff has failed to demonstrate this most critical aspect of a constructive trust claim.

### B. Plaintiff's Inability to Trace Funds is Preclusive of a Constructive Trust Claim

59.     Even if the Court were to consider tracing in this case, which the foregoing authorities seriously discourage in these circumstances, the Amended Complaint fails. In the Second Circuit, in addition to the four elements noted above, a plaintiff seeking the imposition of a constructive trust must "establish proof of a *res* to which the constructive trust could attach and . . . [must] trace the property." *In re Ames Dept. Stores, Inc.*, 274 B.R. at 625 n.16. In other words, a party seeking to impose a constructive trust is required to trace its interest to "identifiable" property held by the alleged constructive trustee. *See, e.g., Conn. Res. Recovery Auth. v. Enron Corp. (In re Enron Corp.),* Adv. Pro. No. 02-2727 A., 2003 WL 1571719, at *5 (Bankr. S.D.N.Y. Mar. 27, 2003) ("Those courts that recognize a constructive trust as not constituting part of a debtor's estate find that the claim must be for specific, identifiable property....").

60.     Where a debtor commingles trust funds with other monies in a single account, the so-called "lowest intermediate balance" rule may aid trust beneficiaries in tracing trust property. *See, e.g., Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 997 F.2d 1039, 1063 (3d Cir. 1993). The rule is a legal construct developed to deal with the problem of identification, *see, e.g., id.*, and has the effect of preventing subsequent additions to the fund by other creditors from being used in satisfaction of the constructive trust.

61.     The "lowest intermediate balance rule" allows trust beneficiaries, in certain circumstances not present here, to assume that trust funds are withdrawn last from a commingled account on the theory that an account holder will spend its own money first. *See id.*; *In re Handy & Harman Refining Grp.,* 266 B.R. 24, 29 (Bankr. D. Conn. 2001). However, if trust money is removed from the account, those funds cannot

be replenished by subsequent deposits. *In re Columbia Gas Sys., Inc.*, 997 F.2d at 1063. Thus, the lowest intermediate balance in a commingled account represents trust funds that have never been dissipated and which are reasonably identifiable.

62.     However, Plaintiff may not avail himself of the "lowest intermediate balance" rule. Where, as here, there is an allegation of a scheme of fraud by the Debtor against multiple victims, the "lowest intermediate balance" rule is inapplicable. As stated in *In re Handy & Harman Refining Group*:

> The intermediate balance rule is applicable only to situations where trust funds are commingled with non-trust funds; it presumes that any withdrawals are made first against the non-trust funds. Such a presumption is meaningless when there are no or inconsequential non-trust funds in the account. "The rule is useful to work out equity between a wrongdoer and a victim; but, when the fund with which the wrongdoer is dealing is wholly made up of the fruits of the frauds perpetrated against a myriad of victims, the case is different. That is to say, as between equally innocent victims, the wrongdoer, having defeasible title to the whole fund, must be presumed to have distinguished in advance [between the funds attributable to the victim-plaintiff and those attributable to other victims] would be carrying the fiction to a fantastic conclusion."

*In re Handy & Harmon Refining Grp.*, 266 B.R. at 29 (citation omitted).

63.     Plaintiff asks the Court to accept that the Debtor's alleged fraud was sufficiently widespread such that it constitutes evidence that this specific transaction constituted fraudulent misconduct. Having done so, Plaintiff cannot simultaneously dispute the related inference that a large portion of the funds in the Debtor's account may be attributed to similarly-situated victims. To do so would be a "fantastic conclusion" that would prejudice the Debtor's other creditors and this estate.

64.     Consequently, the Amended Complaint itself precludes any attempt by Plaintiff to apply the "lowest intermediate balance" rule, and this supports dismissal of the Amended Complaint with prejudice.

## NOTICE

65.     Notice of this Motion has been provided to counsel for Plaintiff.  In light of the relief requested, the Trustee respectfully submits that no further notice is necessary.

## NO PRIOR REQUEST FOR RELIEF

66.     No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE,** the Trustee respectfully request entry of an order dismissing the Amended Complaint with prejudice, and such other and further relief as the Court may deem just and appropriate.

DATED:  New York, New York
        January 12, 2018

                                        ALBERT TOGUT, not individually but solely
                                        in his capacity as Chapter 7 Trustee,
                                        By his Attorneys,
                                        TOGUT, SEGAL & SEGAL LLP
                                        By:

                                        /s/ Neil Berger
                                        NEIL BERGER
                                        One Penn Plaza
                                        New York, New York 10119
                                        (212) 594-5000